LANGAN v. ÆTNA INS. CO. SAME v. SPRING GARDEN INS. CO. SAME v. GERMAN ALLIANCE INS. CO. SAME v. PALATINE INS. CO.

(Circuit Court, N. D. Iowa, Cedar Rapids Division. January 20, 1900.)

1. FIRE INSURANCE—ELECTION TO REBUILD—PLEADING.
   Where, there being a controversy between insured and the insurer whether the latter had lost its right to elect to rebuild, the former brought action for the money indemnity, and the insurer set up its election, and alleged its willingness to rebuild, and the court decided that it had not lost such right, and thereupon insured accepted the offer, the insurer cannot rescind its position assumed in such pleading, and deny all liability on its contract of insurance, because, pending the controversy, the cost of the building has increased.

2. SAME—ACTION FOR MONEY INDEMNITY.
   Though an insurer elects to rebuild, it having failed to do so insured may sue on the original contract for the money indemnity.

Actions at law on four policies of insurance issued by the above-named companies on same building. Jury waived, and cases heard together by the court.

R. C. Langan and Walsh Bros., for plaintiff.
Hayes & Schuyler and George Steere, for defendants.

SHIRAS, District Judge. The facts necessary to an understanding of the legal questions involved in these cases, briefly stated, are as follows:

The plaintiff, Daniel Langan, being the owner of a brick dwelling house situated in the city of Clinton, Iowa, obtained insurance against loss by fire in the defendant companies, the policy issued by the Ætna Company being dated October 24, 1895; that in the Spring Garden Company being dated December 31, 1897; that in the German Alliance being dated January 1, 1898; and that in the Palatine Company on the 8th day of January 1898,—each of said policies being for the sum of $5,000. On the 23d day of January, 1898, at which time the four policies above named were in full force, a fire occurred, greatly injuring the building insured, and due notice thereof was given to the four insurance companies carrying risks upon the premises. Not being able to agree upon the amount of the loss, the parties in interest, as required by the terms of the policies, entered into a written agreement for the appointment of appraisers to ascertain the total loss, and award the amount each company would be liable for under its policy. The appraisers thus appointed fixed the total loss to the insured at the sum of $20,095, and awarded the amount for which each of the companies would be liable at the sum of $5,000; or, in other words, as the total loss exceeded in amount the aggregate of the policies, the sum chargeable against each company would be the full amount called for by the policy issued by it. The award of the appraisers was dated June 30, 1898, and on the 27th day of July the four insurance companies united in a written notice to the insured that they elected to repair and rebuild the destroyed dwelling. To this notice, and under date of August 4, 1898, the insured responded, in writing, denying the right of the companies to elect to

repair or rebuild the premises, claiming that the right secured by the policies to the companies to repair or rebuild could not be availed of after the lapse of 30 days from the reception of the notice of the fire; that by the act of the companies in agreeing to, and participating in, the appraisal of the damage to the property, the companies had elected to treat the policies as money contracts, and they could not afterwards change this election, and undertake to rebuild the premises; and the insured further notified the companies that they must make prompt payment in money of the sums awarded against them, or suits for recovery of the amounts would be brought against them. Thus the parties were at issue as to the construction of the terms of the policies, and thereupon, on or about the 30th day of December, 1898, these actions were brought against the several named insurance companies, in the district court of Clinton county, Iowa, from which court, on petition of the defendant in each case, they were removed into this court in the Cedar Rapids division. The defendant company in each case, in answer to the petition of plaintiff, set forth various matters with respect to the action of the appraisers upon which it was claimed that the appraisal of the damages was not valid and binding upon the company, and then averred that, under the terms of the policy, the company had the right to elect to repair and rebuild the premises; that it had exercised this right by giving written notice of the election to rebuild; and that the plaintiff had refused to permit the rebuilding of the injured property, and therefore could not maintain the action. In reply to the answer, the plaintiff made counter charges of bad faith on part of the appraiser selected by the company, averred the validity of the appraisal, and denied the right of the company to repair or rebuild, under the facts of the case. The defendant filed a motion to strike out parts of the reply, and at the September term, 1899, of the court at Cedar Rapids, the cases having been noted for trial at that term, the motion was argued and submitted to the court, it being claimed on behalf of the defendant that all matter averred in the reply touching the appraisal, and the action of the parties and the appraisers in connection therewith, was wholly immaterial, for the reason that the company, by the notice given under date of July 27, 1898, had secured the right to perform its contract by restoring the burned premises; that, by giving the notice, all objection to the appraisal had been waived, and the rights of the parties were to be determined by the construction of the clause in the policy which gave the right to repair or rebuild. Thereupon the court held that the ruling to be made on the motion to strike involved the more important question of the construction of the clause in the policy giving the election to the company to repair or rebuild the premises, and that it would be advisable to fully present this question to the court, and obtain a ruling thereon, before going to the jury on the questions involved; and thereupon counsel were heard upon the question, and, after consideration thereof, the court ruled that, under the language of the policies sued on, the companies had the right to elect to rebuild the premises, by giving notice of such election within 30 days after reception of the proofs of loss, and that this 30-day period did not begin to run until the proofs of loss had been completed by the appraisal of the amount of the damages,—the opinion of the court at length being found in 96 Fed. 705. It will be noticed that in the opinion given the court, in view of the doubt existing upon the proper construction of the terms of the policy, suggested that the question should be settled by an immediate appeal to the circuit court of appeals; but, after consultation, the counsel for plaintiff announced in open court that they would abide by the view taken by this court, and that all objections to the company rebuilding the premises were withdrawn. Thereupon counsel for the defendant companies asked for time within which to consult with their clients as to their further action in the premises, and to that end it was finally agreed between the parties, with the approval of the court, that the hearing should be postponed until the December term of the court at Dubuque. At that term of the court the defendants filed amended and substituted answers, in which are set forth the clause of the policies providing for the repairing and rebuilding the premises; the giving of the notice that the companies elected to rebuild; the written refusal of the plaintiff to permit the premises to be rebuilt; and it is then averred that, during the time the plaintiff refused to permit the rebuilding of the premises, the

cost of the labor and material necessary to restore the premises had so increased that in September, 1899, and ever since, the expense to the companies of rebuilding would be about 33 per cent. greater than it would have been during the summer or fall of 1898. By consent of the parties, a jury trial was waived, and the cases were submitted to the court upon the law and the facts, and a finding of facts has been made in writing to the effect of the recitals herein set forth, and thus are presented the questions of law arising in the cases.

The facts found, under the evidence and the pleadings of the defendant company in each case, show that when the fire occurred, in January, 1898, the plaintiff held a valid policy of insurance in each company for the sum of $5,000; that due notice of the happening of the fire was given to the companies; that, in order to ascertain the amount of the total loss caused by the fire, the parties, by mutual agreement, caused an appraisement to be made, and this appraisement fixed the total loss at $20,095, and the amount chargeable against such company at the sum of $5,000; that the completed proofs of loss, including the appraisement, were furnished to each company about June 30, 1898. These facts, which are not in dispute, show that, upon the completion of the proofs of loss, the plaintiff had established a valid right to indemnity from each one of the defendant companies, according to the terms of the several policies issued by them, respectively. It was then open to each of the companies to perform its contract of indemnity in one of two methods. It could pay the amount chargeable against it in cash, or it could restore the injured premises by repairing or rebuilding the same.

By the terms of the policy, the company had secured to itself a period of 30 days, after service of proofs of loss, within which it could determine upon the method of performance on its part. During this period of 30 days it had the right to elect whether it would undertake to perform its contract of indemnity by payment in money or by repairing or rebuilding the premises. If it elected to perform by payment in money, then the payment must be made in 60 days from service of the proofs of loss. If it elected to rebuild or repair, then it would be bound so to do within a reasonable time. The exercise on part of the company of the right of election between the two methods of furnishing indemnity to the insured is not, in any proper sense, a performance of the contract to furnish indemnity. To discharge the obligation assumed by the company, it must furnish the indemnity in one of the two agreed methods. The giving of the written notice of the election to rebuild the premises only secured to the companies the privilege of furnishing indemnity in that mode, but the making the election, and giving notice thereof to the insured, was not a performance of the contract of indemnity. To complete performance, the company must follow up the notice of its election by actually rebuilding the premises. If it does not do so, then it is bound to furnish the indemnity to which the insured is entitled by paying the amount of loss in money.

But it is contended on behalf of the defendants that the failure to rebuild is not chargeable to the companies, but has resulted from the action of the plaintiff in denying the right of rebuilding. The

facts show that there was an honest difference of opinion between the insured and the companies upon the question whether the companies could elect to rebuild after entering into an appraisal of the damages. This question was strictly one of law, and, in order to settle it, the adjudication of a court was necessary. To that end these actions were brought in the state court, and thence removed into this court. The answers were filed in this court on June 24, 1899, and, after reciting therein the giving of the written notice of election to rebuild, it is then averred "that this defendant and said other companies have ever since, and now are, ready and willing to comply with said notice, and repair and rebuild said insured property, according to the terms and the provisions of the said policy of insurance, but that said plaintiff has not permitted, and will not permit, the same to be done." As already stated, in September, 1899, the question of the right to rebuild was submitted to the court, and it was held, in effect, that the companies, by entering into the appraisal, did not lose the right to rebuild, and by the giving the written notice dated July 27, 1898, the companies had signified their purpose to furnish indemnity for plaintiff's loss by repairing and rebuilding the injured premises, and that, as pleaded in the answers, this right was still open to the companies. Thereupon the plaintiff accepted the ruling then made as a finality upon the question, and thus the way was opened to the companies to undertake the work of restoring the damaged premises, the further hearing of the case being postponed in order to enable the companies to determine whether they would in fact avail themselves of the conceded right to rebuild.

By the amendment to the answers made at the December term, the companies, in effect, decline to rebuild the premises, assigning as a reason therefor that the increase in the cost of labor and material is such that it would greatly increase the expense of so doing, and hence they now ask that it be adjudged that they are not bound to furnish indemnity to plaintiff, either by a cash payment or by rebuilding the insured property. The fact of the increase in the cost of rebuilding may be a sufficient reason for the action of the companies in not undertaking to repair or rebuild, but it ought not to operate as a discharge to the company from all liability upon the policy. When the answers were filed in these cases, in June, 1899, and when the question was submitted to the court, in September, 1899, the companies claimed that they were then ready and willing to rebuild the premises, and the plaintiff at that time, after hearing the opinion of the court, accepted the offer to rebuild, and it is not now open to the companies to rescind the position assumed in the pleadings, and to deny all liability on the contracts of insurance, on the ground of the increased cost of rebuilding. The facts in the case show that the company had become bound to fulfill its contract of indemnity.

The company claimed that it had the right to furnish indemnity by a cash payment or by rebuilding. The insured claimed that by the action of the company it had waived or lost the right to rebuild. The insured brought these actions on the contracts evi-

denced by the policies, claiming a money indemnity, and the companies answered that they had the right to furnish indemnity by rebuilding the injured premises, and that they stood ready to fulfill the contract by that method of performance. The court, upon the pleadings thus made, held that it was still open to the companies to meet the obligation of their contracts by rebuilding the premises. The companies now seek to escape all liability by averring that the increase in the cost of labor and material is so great that they ought not to be required to be bound by their election to rebuild, and ought not to be held to pay the indemnity in money. The court will not require them to rebuild, nor does the plaintiff demand indemnity in that form; but upon what ground should the companies be relieved from making payment in money of the sums due upon the policies? The theory of the defense is that, if the companies had been permitted to rebuild in the summer or fall of 1898, it would have cost them much less than if they now rebuild, which may be a fair reason why the companies should be excused from rebuilding; but why should that fact relieve the companies from their obligation to make indemnity to plaintiff by a payment in money? It is argued that, if the companies had been permitted to rebuild in the summer of 1898, they could have done so at an expense less than the amount of the money payment awarded against them; but how can this be proven? The defendants have not undertaken to show what the cost of rebuilding the premises in 1898 would have been, and it is a matter of common knowledge that the actual cost of building almost always outruns the original estimate.

The gist of the objection to being held liable for the money payment on the policies is that, if the companies had been allowed to rebuild in 1898, they might have succeeded in rebuilding at an expense less than the $20,000, which they were bound to pay if they did not rebuild; but there is no fact shown from which the inference can be drawn that it would have been cheaper for the companies to rebuild than to pay in money, nor is it averred in the substituted answers that such is the fact. It is not now averred in the answer, nor is it proven as a fact, that, if the companies are now required to pay the amount of their policies in cash, it will place a greater burden on them than they would have assumed had they undertaken to rebuild the premises in the summer of 1898. The position now taken by the companies is that, if they should now rebuild, it would be at a cost greater than that they would have assumed had they been permitted to rebuild in 1898. This fact may constitute a good and sufficient reason why the companies should be excused from rebuilding, but it does not constitute a reason why they should not pay in money the indemnity they owe to the plaintiff.

But it is further contended that when the companies notified the plaintiff in July, 1898, that they elected to rebuild the destroyed premises, they thereby converted the contracts for indemnity, evidenced by the policies, into contracts for the rebuilding of the premises, and that the plaintiff should have declared upon the substituted building contract and the failure to perform it, and not upon

the original contract for indemnity. If this position is well taken, it follows that in every instance wherein policies of the form of those sued on are issued, and a loss happens, the company can sigrify its election to rebuild, and then fail so to do, and thus compel the plaintiff to sue for the unknown and uncertain amount of damages which might be awarded by a jury for the breach of the alleged contract to rebuild. Upon the company would be placed the burden of responding to the damages for not rebuilding, which, in the majority of cases, would exceed the money payment necessary to discharge the contract for indemnity. In this case the contracts evidenced by the policies issued by the four companies have no relation to each other. They were issued at different dates, and in each case the company bound itself to furnish indemnity against loss by fire by a payment in cash or by repairing or rebuilding the injured premises. Under the terms of the policies, in case of a loss in amount less than the aggregate amount of the insurance, each company would be bound to pay only its proportionate amount of the total loss; but if the original contracts are merged into building contracts, as contended for by the defendants, then the plaintiff would have a separate contract with each company, whereby the latter had become bound to rebuild the injured property, and for a breach thereof the plaintiff would be entitled to judgment against each company for the full amount of the damages caused by its failure to rebuild. Again, suppose, in this case, two of the companies had paid their policies in money, and the others had elected to rebuild; it certainly would not be true that the latter would have the right to half repair or rebuild the house, or to rebuild in such a manner that, as rebuilt, the house would be worth only one-half what it was when the fire occurred. Again, suppose, after the companies had given notice of their election to rebuild, two thereof had become insolvent, and had refused to engage in rebuilding the premises; would it be open to the remaining companies to only half repair or rebuild, and then claim that they were exonerated from further responsibility? These suggestions show that, if the theory of the conversion of the contracts evidenced by the policies into contracts for rebuilding the injured premises is adopted, then, for the proper protection of the insured, it must be held that each company is bound to fully repair or rebuild, and, in case that is not done, then each company is liable to a judgment for the full damages resulting from the breach of the rebuilding contract. This would cast a heavy burden upon the company, and yet can there be any escape therefrom, in justice to the insured? These difficulties are all avoided, however, by holding that a mere notice of an election to rebuild on part of the company does not merge, convert, or affect the contract for indemnity contained in the policy. The giving of the notice of the election to rebuild within the time limited in the policy secures the privilege to the company of discharging its obligation by rebuilding, but if the company, for any reason or for no reason, does not in fact repair or rebuild, then the contract remains unchanged, and the insured is entitled to demand of the com-

pany that it shall pay in money the sum due on the policy, and, if payment is not made, then to enforce it by judicial aid.

The conclusion reached is that, when the completed proofs of loss, were furnished to the defendant companies, the plaintiff had established a clear right to demand from the companies indemnity for the damages caused to the property by the fire therein; that the obligation rested upon each company to furnish the indemnity either by a money payment, or by rebuilding the premises within a reasonable time; that the companies have had a reasonable time within which to undertake the rebuilding of the premises, but they have not undertaken so to do, and now aver that they are not bound to rebuild; that, therefore, the companies are bound to furnish indemnity by a payment in money of the sum awarded against each company, and, as this payment has not been made, the plaintiff is entitled to judgment for the sum due in each case. The question of the interest to be allowed depends upon the time when it is held that the companies became in default for a failure to pay the indemnity in money. There is much force in the argument that it should not be held, under the peculiar facts of these cases, that the companies are chargeable with interest during the time the parties were litigating over the question of the right to rebuild, the question being decided in favor of the companies. If, however, the court should hold that interest is to be allowed only from the date when the final failure to undertake the rebuilding took place, then, in order to present the question in the appellate court, the plaintiff would be compelled to take a writ of error, although the judgment on the merits is in his favor. As it is understood that the defendants purpose going to the court of appeals on the question of liability for any sum, the question of the amount of interest allowable, in case it is finally held that plaintiff is entitled to recover, can be presented, on the writ sued out by the defendants, by this court ruling that interest is to be allowed from September 1, 1898, or, in other words, from 60 days after the furnishing the completed proofs of loss; and if in the court of appeals it be held that plaintiff is entitled to recover, but that the amount of interest allowed is excessive, the proper reduction can be ordered in the final judgment. The amount for which judgment will be entered in each case is $5,000, with interest thereon at 6 per cent. per annum from September 1, 1898, to January 20, 1900.