# `CASES

## ARGUED AND DETERMINED

### IN THE

## UNITED STATES CIRCUIT COURTS OF APPEALS, THE DISTRICT COURTS, AND THE COURT OF APPEALS OF THE DISTRICT OF COLUMBIA

---

## BATES v. OREGON-AMERICAN LUMBER CO.

(Circuit Court of Appeals, Ninth Circuit. January 21, 1924.)

No. 4063.

1. **Trial ⊚⟹89—Evidence in favor of employee's claim for services held sufficient as against motion to strike, made during presentation of plaintiff's case.**

In an action on an employment contract, testimony of defendant's vice president, who was a director and also general and managing agent and attorney in fact of its Oregon business, in favor of plaintiff's claim, *held* sufficient to withstand defendant's motion to strike, made in the middle of plaintiff's presentation of evidence.

2. **Trial ⊚⟹92—To strike evidence for insufficiency before all of it is in held premature and error.**

At any stage of a trial to strike evidence for mere insufficiency is not commendable practice, and to strike it before the party aggrieved has concluded his case, and before it is obvious that he cannot supply any deficiency, is premature, and error.

3. **Pleading ⊚⟹32—Pleading cannot give severable contract contrary construction.**

A pleading cannot give to a severable contract a contrary construction.

4. **Pleading ⊚⟹64(2)—Items in complaint for services under contract held properly included in single count.**

Even if all the items of service under a severable employment contract constituted separate causes of action, being of like character, they were properly included in a single count.

5. **Pleading ⊚⟹246(2), 399—Failure to prove all items under single count held not fatal variance.**

Even if plaintiff failed to prove all the items of service under a severable employment contract which were included in a single count of the complaint, there would be no variance fatal to recovery, or invulnerable to amendment, if necessary.

6. **Trial ⊚⟹45(1)—General offer of proof held sufficient, where generality due to court's direction.**

Though ordinarily an offer of proof which includes all the allegations of the complaint is too general, and avails nothing, if denied, where the generality was due to a ruling of the court, and defendant failed to object thereto, it was sufficient, especially where the court had indicated that its mind was made up, and that no proof could be made.

---

⊚⟹For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

295 F.—1

In Error to the District Court of the United States for the District of Oregon; Robert S. Bean, Judge.

Action by Paul C. Bates against the Oregon-American Lumber Company. Judgment for defendant, and plaintiff brings error. Reversed and remanded for new trial.

See, also, 285 Fed. 666.

Wilbur, Beckett & Howell and F. S. Senn, all of Portland, Or., for plaintiff in error.

Wm. A. Munly, Wm. P. Richardson, and James G. Wilson, all of Portland, Or., and De Vine Howell Stine & Gwilliam, of Ogden, Utah (A. W. Agee, of Ogden, Utah, of counsel), for defendant in error.

Before HUNT and RUDKIN, Circuit Judges, and BOURQUIN, District Judge.

BOURQUIN, District Judge. Error is assigned, for that the court below struck out the testimony in behalf of plaintiff, rejected his offer of proof, and directed verdict for defendant. The complaint in a single count upon contract alleges that in August, 1917, defendant "did hire and employ this plaintiff to assist and aid in developing and marketing" certain timber land and timber thereon, "and agreed to pay plaintiff for his services and to reimburse him for his expenses" therein.

Then follow 15 paragraphs, in each of which is alleged a separate item of service at different, but overlapping, periods of time from August, 1917, to February, 1921, its reasonable value and expense incurred, and that it was rendered by plaintiff by defendant's directions and "under the general contract of hiring heretofore mentioned." These items of service embrace negotiations for railway transportation facilities in connection with lumbering the land and removing the timber, including therein lease or purchase of railways, and sales of land or corporate capital stock.

[1] The evidence at the trial consists of admissions in defendant's answer, certain documents, and the testimony of one Early. From the admissions and documents it appears that in June, 1917, defendant was incorporated in Utah, with capital stock consisting of 35,000 $100 shares, and powers literally to do any lawful corporate act and to carry on any lawful corporate business anywhere. In July, 1917, it qualified to do in Oregon "a general lumbering business and anything connected therewith," and then began, and at all material times thereafter continued to do, such business.

Its president was one Eccles, who was also a director and general manager, with power "to look after and superintend all of the affairs of the company, and subject to such regulations as may be imposed by the board of directors, to employ all assistance and labor necessary therefor." Early was its vice president, a director, and in Oregon was its general and managing agent and attorney in fact for service of process. Of the corporate capital stock, Eccles held legal title to 32,000 shares, and Early owned 500 shares.

Plaintiff's first witness was Early, and he testified in substance as follows: What may be characterized as the Eccles interests of Utah had operated in corporate capacity in lumbering and railroading in

Oregon for more than 28 years prior to June, 1917. During that time, and in Oregon, Early had been in their employ, the latter part of which he had been their vice president and general manager. In 1917 these interests bought some 27,000 acres of timber land in Oregon, organized this defendant, and to it transferred said land, its only property.

Early was its only officer resident in Oregon, there attended "to the handling and operation of the property," "handled here the business of this company," and he "always understood" he was its general manager in Oregon. Defendant's intent was to develop the property, and at once set about it. It had no means of transportation to and from the land, and to secure them were its first activities. In August, 1917, Early for defendant and plaintiff entered into a "general contract of hiring," the latter to render services to the defendant in the matter of development of its property, in return for which his "expenses were to be paid and he would be properly compensated for his time."

This general contract of hiring was or in part at least included the first item of service in point of time and alleged in the complaint, and to that extent was made or directed by both Early and Eccles. It required plaintiff to investigate railways, to negotiate for transportation to and from the land, and to secure an option on a property that apparently was a logging railroad. Thereafter followed the other services of like and other kind. When this general contract of hiring was made, no sale of land by defendant was in contemplation, save in reference to part of the acreage, and in the making of said contract no mention was made of sale of land or corporate stock. But as time passed defendant determined to sell all, instructed Early to sell, and ·the contract with plaintiff developed into more transactions, both in respect to transportation and to sale, than originally contemplated.

All the items of service counted on by plaintiff were to some extent rendered, and by Early's directions, with Eccles' prior or subsequent sanction in the main. Early attended no meetings of the directors until late in 1920, and after most of plaintiff's services had been rendered, and then only did he report them to the board, even as he then did his other hirings for defendant in the same period and paid for by it. But at all times save one he contemporaneously advised Eccles thereof, who approved and joined in the directions to plaintiff. Of the later services all officers and directors of defendant were contemporaneously aware, and made no objection, though in respect to the chief and last service the board changed the transaction from a sale of land to one of corporate stock, to escape paying commissions to plaintiff or any one. During the time involved, Early received all his compensation from the Eccles corporations other than defendant.

At the conclusion of Early's testimony (counsel for plaintiff theretofore stating the purpose was but to disclose the witness' relationship to the parties and Early to be recalled), counsel for defendant moved to strike all of it "concerning any contract between" the parties, upon the ground of lack of authority in Early to represent defendant therein. The court granted the motion, for that:

"It seems to me, as the evidence now stands, if we are to take the record as it now stands, that there is no sufficient evidence to show that Mr. Early had authority to enter into this contract. It was made within a month of

the organization of the corporation, and the only evidence of his authority is his own statement that he assumed that he was general manager and was in the employ of the company, but there is no evidence of any employment by the company, or that he ever received any compensation from the company, or that the company had held him out, up to the time this contract was entered into at least, as representing it in any way, and this particular contract, made in August, 1917, is the one upon which this action is based, and it is the one upon which this plaintiff must either stand or fall in this litigation. Unless Early had authority, either 'expressed or implied at the time he entered into that contract, it is not binding on the company unless there is proof of subsequent acquiescence and ratification, and there is no evidence offered. up to this time at least, to show any acquiescence or ratification by the company. * * * Mr. Early testified that he never at any time reported this contract with Mr. Bates to the board of directors, and it is quite clear that Mr. Eccles, as president of the concern, had no authority to either enter into the contract or to ratify it, because his authority as president alone was confined to presiding over the deliberations of the board, and he had no authority to make a contract of the. kind that is sued on in this suit, unless he was authorized by his board of directors to do so, and there is no such evidence up to this time in this case. * * * So that as the record now stands the evidence is not sufficient, in my judgment, to show that Mr. Early had any authority to bind the company by the particular contract upon which this action is based. These transactions that occurred later, the railroad transaction and some of these others, if they were ratified, subsequently ratified by the company, might constitute a separate cause of action, but that is not the one upon which this action is prosecuted, and so the court is of the opinion that the motion made is well taken and that the evidence should be stricken out."

Thereupon counsel for plaintiff stated he desired to "make a record, * * * to put on our evidence," to which, in colloquy with counsel, the court responded, Counsel "can make an offer of proof; no use taking up the time of the court presenting it in detail;" that it could be dictated "in a general way, just a general statement, not in detail; I suppose your offer would be simply evidence tending to support the allegations of the complaint;" that it might be done in the presence of the jury, as "it will probably never get to the jury."

In compliance with the court's directions, counsel offered to prove that plaintiff "performed all the services set forth in the complaint"; that he reported all thereof to Eccles, and Eccles instructed and requested plaintiff to perform said services, or at least a large part of them; that he performed them under the instructions of Eccles and Early; that defendant accepted the results of said services and in respect to the chief item of service, and of which defendant received the benefit, it agreed and promised to pay him; that he would "show" that the allegations of the complaint are true, and "prove that our evidence will support each and every one of the allegations and elements set forth in the complaint."

The court inquired, "The specific items?" and counsel answered, "Yes." The defense objected to the offer, "upon the ground it is incompetent, no proper foundation laid for it, and the proof offered does not tend to establish the authority of Mr. Early to make the contract in question, as the greater portion of the offer goes to the proof of the contract, and not to the question of authority to make it." The objection was sustained, and verdict was directed for defendant. Giving plaintiff the benefit of the rule that in like circumstances the party whose testimony is stricken and offer of proof rejected is entitled to

all reasonable inferences favorable to him, from the foregoing it is evident that the trial court struck out Early's testimony upon the assumptions that plaintiff must fail unless he proved strictly as alleged in time and extent the contract in suit; that the court sua sponte should note any variance, though not fatal or obnoxious to amendment; and that, said testimony not sufficing to prove said contract as aforesaid, the inference was that plaintiff was unable to produce additional evidence to make up the deficiency.

This we believe to be error. Whether the transactions involved constitute an entire or severable contract, whether the contract alleged, or any contract, could be proven strictly as of the date laid, and in original form or by subsequent modification to include all or only part of the items of service alleged, whether made for defendant by Early and Eccles with precedent authority, or was validated by subsequent acquiescence or ratification, it is clear that Early's testimony in whole or in part was competent, material, and tended to prove some, if not all, of the alternatives aforesaid, tended to prove plaintiff's case; and that was sufficient to withstand the motion to strike, made in the middle of plaintiff's presentation of evidence. He could not introduce all his evidence, or prove all his case, at once. As the trial court observed at the close of Early's examination (in response to counsel's statement that there would be "other testimony on the question of this contract"), "it can't be determined on testimony of one witness."

[2] At any stage of a trial, to strike evidence for mere insufficiency is not commendable practice, and to strike it before the party aggrieved has concluded his case, before it is obvious that he cannot supply any deficiency, is premature and error. See Withers v. Kemper, 25 Mont. 435, 65 Pac. 422. If mere insufficiency of evidence would justify intermediate striking out, no case could be proven. It was for insufficiency alone that Early's testimony was stricken, and at a time when for all that appears plaintiff would have supplied all if any deficiencies fatal to any recovery. That he would not was erroneously assumed by the trial court, and the court, erroneously sua sponte taking note of what it considered a fatal variance, granted the motion to strike.

[3-5] In the circumstances it is unnecessary to more specifically point out that Early's testimony was competent and material, whatever be the theory of the case. We may observe, however, that complaint and evidence indicate a severable contract (Krebs Co. v. Livesley, 59 Or. 574, 114 Pac. 945, 118 Pac. 165, Ann. Cas. 1913C, 758); that, if so, the pleader cannot give to it a contrary construction (Robert, etc., Co. v. Selden, etc., Co., 257 U. S. 214, 42 Sup. Ct. 84, 66 L. Ed. 201; Loveland v. Warner, 103 Or. 638, 204 Pac. 627, 206 Pac. 298); that, if the items of service are separate causes of action, they are like in character, and so may be included in a single count (31 Cyc. 119; Innes v. Hay, 28 Wyo. 274, 203 Pac. 1091); that otherwise defendant interposed no proper objection; that, if plaintiff failed to prove all items of service alleged, therein would be no variance fatal to recovery, or invulnerable to amendment, if necessary; that, had plaintiff rested on the case made at conclusion of Early's testimony, the evidence sufficed for recovery by plaintiff for items of service in the matter of investiga-

tion and negotiation for transportation, for that Eccles and Early (the first general manager in name, and the latter in fact), operating the going business of defendant, had implied, if not express, authority to negotiate for and secure to reasonable extent transportation necessary to the business, and to employ plaintiff to that end. So, too, is it unnecessary to follow counsel in their elaborate discussion of corporation law, and of the powers of Eccles and Early to secure necessary transportation, to lease, buy, and sell for defendant. The law in respect thereto is clear enough, and will be properly applied by the trial court.

[6] Following the order to strike, plaintiff made offer of proof, including proof of all the allegations of the complaint. Ordinarily, an offer so general and of conclusions avails nothing, if denied. In this case, however, the generality, if not the form, of the offer was in due obedience to the ruling or directions of the trial court, and defendant objected to neither of those doubtful aspects. Moreover, it well may be that, to preserve plaintiff's right to assign error to the order to strike, no offer of proof was necessary. The attitude of the trial court was that plaintiff must fail unless he proved strictly as alleged the contract of August, 1917, and the court indicated its mind was made up that no such proof could be made; that is to say, the offer of proof was reduced to a mere formality, and so useless, and not required by the law. Hence, made and in general terms, it serves every purpose. See Brundage v. Mellon, 5 N. Dak. 72, 63 N. W. 209; Philadelphia, etc., Co. v. Baltimore City, 124 Md. 635, 93 Atl. 146; Horbach v. Boyd, 64 Neb. 129, 89 N. W. 644; Pastene v. Pardini, 135 Cal. 431, 67 Pac. 681; Loeb v. Willis, 100 N. Y. 231, 3 N. E. 177.

The error involved in the order to strike was perpetuated in the rejected offer of proof, and in directing verdict for defendant. Accordingly we are constrained to reverse the judgment below, and remand the case for a new trial.