### SIEGEL v. OHIO MILLERS' MUT. FIRE INS. CO. *

Circuit Court of Appeals, Eighth Circuit. December 4, 1928.

No. 8130.

*Rehearing denied March 12, 1929.

J. K. Murray, of Mott, N. D. (H. P. Jacobsen, of Mott, N. D., and Scott Cameron, of Bismarck, N. D., on the brief), for appellant.

H. G. Nilles, of Fargo, N. D. (Aubrey Lawrence and Matthew W. Murphy, both of Fargo, N. D., on the brief), for appellee.

Before STONE and VAN VALKENBURGH, Circuit Judges, and PHILLIPS, District Judge.

VAN VALKENBURGH, Circuit Judge. Appellant sues on a policy of fire insurance upon certain personal property situated in a building occupied as a men's clothing store in the city of Bismarck, N. D. The stock also included shoes. Appellee's policy was for the sum of $5,000. There was upon the same merchandise another policy in the sum of $2,000, issued by the Insurance Company of North America. February 22, 1926, fire broke out in the store building, and, as a result, the merchandise was greatly damaged, for the most part by smoke and water. On the 26th and 27th of February one E. C. Gearey, an insurance adjuster representing the Western Adjustment & Inspection Company, by direction of appellant, called upon appellant's husband, manager of appellant's store, for the purpose of adjusting the loss by reason of this fire. They were unable to agree upon the amount of loss and damage, and thereupon, under the provisions of the policy, two appraisers were appointed, one by the company and one by the insured, and the two so chosen selected an umpire. On the 12th day of March the appraisers met in an effort to appraise the loss. The representative of the company sought to make an inventory of the property in the store, but the representative of the insured refused to assist in taking such inventory and to proceed with the appraisal upon that basis. The theory of the representative of the insured was that the basis of appraisal should be an inventory taken on the 5th day of January preceding, adding thereto goods thereafter purchased, and subtracting therefrom sales made. The representative of the company, acting under his construction of the requirements of the policy, refused to participate in an appraisal upon that basis. Thereafter, the presentative of the insured and the umpire made an award of loss and damages in the sum of $6,795.24. This award was signed by both parties, but the umpire appended to his signature the following statement:

"Signed as to value of stock in present condition I agree with the method of Appraiser R. L. Johnsrud arriving at the loss assuming the inventory was $10,192.86, the loss and damage is $6,795.24."

Appellee refused to accept this award because of the appraisement method employed. March 23, 1926, over the repeated protest of the insurance company, the entire stock remaining was sold by appellant, and later this suit was brought for the recovery of the proportionate share of the loss and damage sustained under the policy of appellee, which was laid at the sum of $4,853.76. At the trial some testimony was received and a number of exhibits filed, and the court being of opinion that appellant could not recover because of failure to observe certain controlling provisions of the insurance contract, for the purpose of shortening the record, permitted appellant to make a final offer of proof. To this offer objection was made and sustained; thereupon a motion by appellee for a directed verdict was sustained and judgment entered accordingly.

The provisions of the policy upon which the contentions of the parties are based are the following:

"If fire occur the insured shall give immediate notice of any loss thereby in writing to this company, protect the property from further damage, forthwith separate the damaged and undamaged personal property, put it in the best possible order, make a complete inventory of the same, stating the quantity and cost of each article, and the amount claimed thereon; and, within sixty days after the fire, unless such time is extended in writing by this company, shall render a statement to this company, signed and sworn to by the said insured, stating the knowledge and belief of the insured as to the time and origin of the fire; the interest of the insured and of all others in the property; the cash value of each item thereof, and the amount of loss thereon; all encumbrances thereon; all other insurance, whether valid or not, covering any of said property, and a copy of all the descriptions and schedules in all policies; any changes in the title, use, occupation, location, possession or exposures of said property since the issuing of this policy; by whom and for what purpose any building therein described and the several parts thereof were occupied at the time of the fire; and

shall furnish, if required, verified plans and specifications of any building, fixtures, or machinery destroyed or damaged; and shall also, if required, furnish a certificate of the magistrate or notary public (not interested in the claim as a creditor or otherwise, nor related to the insured) living nearest the place of fire, stating that he has examined the circumstances and believes the insured has honestly sustained loss to the amount that such magistrate or notary public shall certify.

"This company shall not be liable beyond the actual cash value of the property at the time any loss or damage occurs, and the loss or damage shall be ascertained or estimated according to such actual cash value, with proper deduction for depreciation, however caused, and shall in no event exceed what it would then cost the insured to repair or replace the same with material of like kind and quality; said ascertainment or estimate shall be made by the insured and this company, or if they differ, then by appraisers, as hereinafter provided; and the amount of loss or damage having been thus determined, the sum for which this company is liable pursuant to this policy shall be payable sixty days after due notice, ascertainment, estimate and satisfactory proof of the loss have been received by this company in accordance with the terms of this policy. It shall be optional, however, with this company to take all, or any part of the articles at such ascertained or appraised value and also to repair, rebuild or replace the property lost or damaged with other of like kind and quality within a reasonable time on giving notice within thirty days after the receipt of the proof herein required of its intention to do so; but there can be no abandonment to this company of the property described.

"In the event of disagreement as to the amount of loss the same shall, as above provided, be ascertained by two competent and disinterested appraisers, the insured and this company each selecting one, and the two so chosen shall first select a competent and disinterested umpire; the appraisers together shall then estimate and appraise the loss, stating separately sound value and damage, and failing to agree, shall submit their difference to the umpire; and the award in writing of any two shall determine the amount of such loss; the parties thereto shall pay the appraiser respectively selected by them and shall bear equally the expense of the appraisal and umpire.

"No suit or action on this policy, for the recovery of any claim, shall be sustainable in any court of law or equity until after full compliance by the insured with all the foregoing requirements.

"The insured as often as required shall exhibit to any person designated by this company all that remains of any property herein described, and as often as required shall produce for examination all books of account, bills, invoices and other vouchers, or certified copies thereof, if the originals be lost, at such reasonable place as may be designated by this company, or its representatives, and shall permit extracts and copies thereof to be made.

"This company shall not be held to have waived any provision or condition of this policy or any forfeiture thereof by any requirement, act or proceeding on its part relating to the appraisal or to any examination herein provided for; and the loss shall not become payable until sixty days after the notice, ascertainment, estimate and satisfactory proof of the loss herein required have been received by this company, including an award by appraisers when appraisal has been required.

"This policy is made and accepted subject to the foregoing stipulations and conditions, and to the following stipulations and conditions printed on back hereof, which are specially referred to and made a part of this policy, together with such other provisions, agreements, or conditions as may be endorsed hereon or added hereto; and no officer, agent or other representative of this company shall have power to waive any provision or condition of this policy except such as by the terms of this policy may be the subject of agreement endorsed hereon or added hereto; and as to such provisions and conditions no officer, agent or representative shall have such power or be deemed or held to have waived such provisions or conditions unless such waiver, if any, shall be written upon or attached hereto, nor shall any privilege or permission affecting the insurance under this policy exist or be claimed by the insured unless so written or attached.

"In any matter relating to this insurance no person, unless duly authorized in writing, shall be deemed the agent of this company."

The insistence of appellee is that immediately after the fire the insured failed to protect the property from further damage, to separate the damaged and undamaged property, to put it in the best possible order, and to make a complete inventory of the same, as provided in the sections quoted; that, against the protest of appellee, before any appraised value had been ascertained, and before the filing of proofs of loss, it sold the

damaged stock and thereby prevented the company from exercising its option to take all or any part of the articles at ascertained or appraised value, or to replace the property lost or damaged with other of like kind and quality within a reasonable time on giving notice, within 30 days after the receipt of the proofs of loss, of its intention to do so. For these reasons, appellee contends that under the terms of the policy there can be no recovery.

Appellant claims, and offered to show, that within 24 hours after the fire one Olson, an agent of the defendant, and authorized and empowered by the adjustment company to look after defendant's interests and rights, assumed management and control of the salvage, the building and the merchandise, and gave directions to the workmen and firemen with reference to handling of the merchandise, and that the firemen and other workmen, over the protest of appellant, shoveled out some damaged merchandise consisting of shoes which lay on the floor and were floating in water; that for this reason, it was unable to make a complete inventory of the damaged merchandise, and that its method of appraisement, to which reference has been made, was the only reasonable and just method to be employed. She further offered to show that on the 27th of February, five days after the fire, in a conversation between appellant and Adjuster Gearey, appellant asked said adjuster if the appellee company intended to exercise its option in the policy of taking over the stock of merchandise or replacing it; and Gearey then and there stated to appellant that the appellee company would neither take over the stock nor replace it; that appellant could do what she desired with the stock; that appellant relied upon this statement, and upon the authority of the adjuster, and on or about the 23d of March made the sale to which reference has been made. Appellant further contends that this action on the part of the adjuster constituted an election not to take over or replace the damaged merchandise; that the adjuster had authority to make this election, which, when once made, was irrevocable. She further urges that the award made was a valid one; that even though there were a failure of arbitration, not due to fraud, bad faith, or other wrongful act on her part, her right of action on the policy is not barred; that the facts proven and offered to be proven constitute a complete cause of action. The errors assigned may be reduced to three substantial points: First, the action of the court in excluding from evidence the award of the appraiser and umpire; second, the court's action in excluding the plaintiff's offer of proof; third, the court's action in directing a verdict in favor of the defendant.

1. We agree with appellee that the arbitration failed, in that the award made was invalid. Because of fundamental difference as to the proper method to be employed in making the appraisement and arriving at the loss sustained, the appraiser appointed by and representing the company, did not participate in the appraisement. In such case. it must appear that the remaining appraiser and the umpire agreed unconditionally upon the result. This, in our judgment, the umpire failed to do. His conclusion, according to his statement, was based upon an assumption and not upon an independent determination. This point, in a suit by this appellant against the Insurance Company of North America, which held the second policy upon this same merchandise, was before the Supreme Court of North Dakota. 219 N. W. 467, 469. Referring to the language accompanying the signature of the umpire that court said:

"We can only construe this language as meaning that the umpire agrees with the method of the appraiser, and that he assumes, without himself determining, that the inventory value was $10,192.86. We cannot construe it as a finding by the umpire that the sound value was in fact $10,192.86. Therefore the failure of the two to agree upon the sound value vitiates the award."

In this conclusion we concur.

2. Appellant's offer of proof was met by the following objection:

"Mr. Nilles: The offer of proof is objected to upon the ground that the same is incompetent; there is no proper foundation laid for the introduction of the facts sought to be proved; the same is not a state of facts sufficient to constitute any cause of action against the defendant; and that upon the record as it now stands there is no proof or any offer of proof that the Western Adjustment & Inspection Company, or Mr. Gearey, or any of the persons referred to in the testimony or offer of proof had any express authority to waive any condition or provision of the policy. It is further objected to specifically because the evidence and the offers of proof do not disclose any alleged waivers were in writing. It is further objected to upon the ground that there is no proof or offer of proof that if in writing the same were attached to or endorsed upon the policy. It is further objected to because the undisputed evidence shows that even if such statement was made by Mr. Gearey that the subsequent writings and letters fully disclose the objections to the sale

or disposition of the property, and that even if such statement was made on or about the date claimed the subsequent letters show without question that the same was withdrawn and revoked and that the plaintiff at no time had any right to rely thereon. There is no proof or offer of proof that the alleged waiver by Mr. Gearey was brought to the attention of the company or that they ratified it. That there is no proof upon which any estoppel can be predicated; that there is no issue in the pleadings with reference to any premium or the return of any unearned premium. I think that covers the objections.

"Mr. Murray: The plaintiff offers to prove that the plaintiff's damages and loss by reason of the fire and water caused by the fire department in trying to clean up the fire to the stock of merchandise described in the policy, exceeded eight thousand dollars, and that the sound value of the merchandise destroyed by the fire and the fire department in extinguishing the fire, did at the time of the fire exceed the sum of eight thousand dollars."

■ Under this objection a number of questions are presented. They concern principally whether a competent offer of proof tended to establish an election on behalf of appellee not to take over or replace the damaged merchandise. In ruling upon this objection the court said:

"All legal questions involved, both of law and fact, have been fully discussed in chambers, and the court has already advised counsel of his views on the matter and those views are that the objections to recovery and the motion made by defendant for a directed verdict in this case must and will be and are sustained."

It is true that the offer was in general terms and substantially covered all the allegations of the complaint. In such case, the general rule is that the offer avails nothing if denied, but there is an exception. Of a similar situation the Circuit Court of Appeals for the Ninth Circuit said:

"The attitude of the trial court was that plaintiff must fail unless he proved strictly as alleged the contract of August, 1917, and the court indicated its mind was made up that no such proof could be made; that is to say, the offer of proof was reduced to a mere formality, and so useless, and not required by the law. Hence, made and in general terms, it serves every purpose." Bates v. Oregon-American Lumber Co., 295 F. 1, 6.

It is true that in that case no objection was interposed, but this does not alter the principle. We think the offer was sufficient to put in issue the question of election.

■ The next question is whether the adjuster had authority to make this election. In Lancashire Insurance Co. v. Barnard (C. C. A.) 111 F. 702, Judge Sanborn, speaking for this court, held that "an adjuster sent out by insurance companies to determine the amount of and settle an alleged loss is authorized to exercise their option to pay the damages or to reconstruct or repair the building injured." In the body of the opinion he says:

"Upon the provisions of the policy of the Lancashire Company, which have been recited, counsel for the plaintiffs in error base an argument to the effect that the attempted election in January, 1897, by the adjuster, to pay the damages, and not to reconstruct the hotel, was ineffectual, because he had no authority to waive any provision of the policy, or to make the election, and because the company had no right or power to exercise its option until after the award of the appraisers had been published. But an adjuster is empowered to settle the alleged loss. A settlement of the loss necessarily involves the exercise of the option to pay the damages sustained, or to rebuild or repair the building injured. The whole is always greater than and includes all its parts, and the authority to settle a loss includes the power to do any lawful act and to make any legal contract to fix the amount of and to discharge the liability. An adjuster of an insurance company authorized to settle an alleged loss has the power to determine its amount, and how, when, and where it shall be paid; and hence he necessarily has the authority to determine whether it shall be paid in money or by the reconstruction of the injured building, and the power to exercise the option of the company in that behalf. Snowden v. Insurance Co., 122 Pa. 502, 510, 16 A. 22; Platt v. Insurance Co., 153 Ill. 113, 122, 38 N. E. 580, 26 L. R. A. 853, 46 Am. St. Rep. 877. No provision of the policy forbids the exercise of this power, and hence no stipulation of the agreement is either violated or waived by its use."

It is true that throughout the record appear letters of the adjustment company, of which Gearey was an officer or employee, protesting against the sale of the merchandise until after a bona fide appraisal had been held, and value and loss and damage determined. In the letter of March 20th, more than three weeks after the election attributed to Gearey, and three days before the sale of the merchandise, the adjustment company wrote appellant as follows:

"We again desire to call your attention to the fact that we protest against any sale or

disposition of this property, or any part thereof, because the result of so doing would be to deprive the companies of valuable rights under the policies, which, under the policies, they have the option to exercise. We do not know whether this is contemplated by you, but if you contemplate the sale or disposition of this property, we want it understood that it is over our objection and protest."

It is suggested by appellee that even though the adjuster in February made the statement relied upon as an election the subsequent letters of the adjustment company before any action was taken operated to withdraw such an election if made and authorized. Appellant replies that such an election once made is irrevocable. Citing Langan v. Ætna Insurance Co. (C. C.) 99 F. 374; Id. (C. C. A.) 108 F. 985; Heilman v. Westchester Fire. Ins. Co., 75 N. Y. 7; Penn. Fire Association v. Rosenthal, 108 Pa. 474, 1 A. 303; 26 C. J. 450, par. 606.

In the authorities cited the election was in each case to replace or rebuild, and it is held that there is thereby created, if accepted, a new and independent contract to replace the property or restore it to its former condition, and the insurer's liability thereafter is for breach of the contract to repair, or replace, and not under the obligation to pay the insurance. We should hesitate to hold that a decision not to replace, which involves no new contract, but leaves that of the original policy in force, may not be withdrawn before it is acted upon by the insured. This seems to be a fair inference from the rule stated by Mr. Benjamin in his work on Sales (7th Ed.) par. 359:

"The rule on the subject of election is, that when, from the nature of an agreement, an election is to be made, the party who is by the agreement to do the first act, which, from its nature, cannot be done till the election is determined, has authority to make the choice, in order that he may be able to do that first act, and, when once he has done that act, the election has been irrevocably determined, but till then he may change his mind."

Altogether it would seem that this entire question of election was sufficiently tendered under the circumstances by the offer of proof and was one for the jury. However, we find it unnecessary, because of other considerations, to rule upon this phase of the controversy.

3. The court's action in directing a verdict in favor of defendant involves a number of questions raised in the brief. Some of them have been disposed of under the preced-

ing heads. It may be conceded that a failure of arbitration does not bar a right of action on the insurance policy when such failure is not due to fraud or bad faith, or any other wrongful act on the part of the insured. So far as most of the facts, ordinarily necessary to disclose ground for recovery under an insurance policy are concerned, to wit, ownership of the property, a policy in force with premium paid, a fire, proofs of loss and the like—these appear to be sufficiently covered by the proofs and offers of proof tendered; however, a serious element, to wit, adequate observance of the terms and requirements of the policy is lacking. The provisions in question are the following:

"If fire occur the insured shall * * * protect the property from further damage, forthwith separate the damaged and undamaged personal property, put it in the best possible order, make a complete inventory of the same, stating the quantity and cost of each article, and the amount claimed thereon."

"The insured as often as required shall exhibit to any person designated by this company all that remains of any property herein described."

"No suit or action on this policy, for the recovery of any claim, shall be sustainable in any court of law or equity until after full compliance by the insured with all the foregoing requirements."

Throughout the period of negotiations, between the fire and the sale of the merchandise by the insured on the 23d day of March, 1926, the company, through its adjustment agency, repeatedly called attention to these provisions of the policy and insisted upon performance by the insured. In the letter of March 1st the adjuster said:

"At this time we again advise you that the companies, and each of them, stand upon the provisions of the policies, and waive none of the rights or defenses therein set forth. Your attention is directed to all the conditions of the contract of insurance, and especially to the following provisions thereof."

Then follows the first paragraph just quoted above. In a letter of March 2d, by the manager of the adjustment company, this same provision is again called to Mrs. Siegel's attention. The demand is repeated in a letter from the adjuster reciting the differences that had taken place between the appraisers as to the proper method of making the appraisal. In another letter on March 6th this language is used:

"The stock itself is the best evidence of value and loss and damage and [that] any

removal or sale by you would destroy such evidence and make it impossible for the appraisers to examine the property or to arrive at a proper value and loss and damage."

The insured persistently refused to conform to this requirement of the policy and to make the inventory thereby required. She insisted that the inventory taken in January, corrected by additions and subtractions of goods subsequently purchased, and sales subsequently made, should be the exclusive guide in determining the loss and damage. Furthermore, the sale of the merchandise was made one day prior to the filing of the proofs of loss. While it is true that the condition of the property after the fire would not be the only matter to be considered in determining the loss and damage, it would, nevertheless, be an important factor in that inquiry, and is expressly made such by the terms of the policy. That provision of the policy is a substantial and reasonable one. It is intended in some measure to prevent the effectiveness of padded inventories and fraudulent claims. That the appellant evinced a determination to ignore this requirement appears not only from her refusal to accede to the repeated demands of the adjuster, but also to the conduct of her appraiser in flatly refusing to consider the goods remaining in the store after the fire. It further appears from the uncontradicted letters and exhibits that appellant's appraiser refused to remain in the store with the company's appraiser and that all reference to the property therein was thereafter disregarded in making the appraisal. The condition attached by the umpire to his signature to the award is significant.

The defense offered to the disregard of this provision of the policy is that one Olson, alleged to be the agent of the adjuster, assumed management and control of the salvage, and that the firemen and workmen shoveled out some damaged merchandise, consisting of shoes which lay on the floor and were floating in water, and in response to appellant's objection said: "I will take care of that. The shoes will dry out outside as well as inside." Because of the alleged removal of such merchandise in the manner stated, appellant claims that she was unable to make the inventory demanded. It appears from the testimony of the husband of appellant that the owner of the building insisted on removing the dirt, plastering and water to protect the floor. The man Olson is shown to have been in this particular the agent of the Insurance Company of North America, and not of this appellee. But, in any event, the fair inference is that but a negligible part of the merchandise was thus removed and there is no evidence that it was not preserved and accounted for by Olson as promised in his statement. It was, furthermore, by the policy made the duty of the insured to protect the property from further damage by remaining floating in the water on the floor. In any event, an inventory could have been made of what remained, and this would have been important in arriving at the loss and damage sustained.

"A policy of insurance is a contract by the terms of which must be measured the right of the insured and the obligation of the insurer." Atlas Reduction Co. v. New Zealand Ins. Co. (C. C. A. 8) 138 F. 497, 9 L. R. A. (N. S.) 433.

This is the established rule. There is, and can be, no pretense that the provision of the policy requiring protection and exhibition, when required, of the goods alleged to be damaged, and the furnishing forthwith of an inventory thereof was waived. We think, as has been said, that this was a substantial provision of the contract, that performance on the part of the insured was refused, and for that reason a suit for the recovery of appellant's claim cannot be sustained. The Dakota statutes to which appellant appeals, to wit, sections 5927 and 7138, C. L. N. D. 1913, have no application.

All the specifications of error urged have been considered and are involved in this discussion and in the conclusions reached. It follows that the judgment below is affirmed.