WILLIAMS, Appellant, vs. FETHERS and others, Respondents.

*September 8—September 23, 1902.*

*Conversion: Possession: Attorneys at law.*

Plaintiff drew on a debtor through a bank for the value of eighty-five cases of eggs. The draft not being paid, the bank delivered it to attorneys for collection, with directions to take such steps as they would if the matter were their own. The attorneys could not collect the amount of the draft and found that the eggs had been disposed of, but obtained from the debtor a bill of sale to them of eighty-five other cases of eggs which were then on the cars ready for shipment, on condition that they would allow the eggs to go forward to the original consignee. This arrangement was approved by the bank. The debtor was insolvent, and the consignee disposed of the eggs and absconded without paying therefor. *Held*, that the attorneys, not having had possession of the eggs shipped by plaintiff, nor of the eggs they tried to get in lieu thereof, were not liable for conversion.

APPEAL from a judgment of the circuit court for Rock county: GEORGE CLEMENTSON, Judge. *Affirmed.*

This action was commenced July 12, 1902, to recover $259.25, the value of eighty-five cases of eggs alleged to have

been shipped by the plaintiff to the Rock River Creamery Company, and the claim for which was delivered to the defendants for collection, with instructions to collect the same or recover possession of the eggs. It is alleged that the defendants recovered and received in payment and satisfaction of such indebtedness eighty-five cases of eggs, but failed and neglected to return the eggs to the plaintiff, or to pay him the value thereof. Issue being joined and trial had, the court at the close of the testimony directed a verdict in favor of the defendants. From the judgment entered thereon in favor of the defendants the plaintiff appeals.

There is no substantial dispute but that at some time prior to June 1, 1901, the plaintiff, a produce dealer at Portage, shipped eighty-five cases of eggs to the Rock River Creamery Company, at Janesville, for which that company was to pay the plaintiff $259.25 ; that, the company having failed to make payment as agreed, the plaintiff drew on the company for the amount through the First National Bank of Portage, and that bank sent the draft to the First National Bank of Janesville for collection. The draft not being paid, the same was, with the bill of lading attached, delivered to the defendants, a firm of lawyers at Janesville, for collection, with direction to take such steps as they would if the matter was their own. The defendants at once tried to collect the amount of the draft from the company, but found that to be impossible, and that the eggs of the plaintiff had been shipped to Chicago and could not be obtained. The defendants then insisted that the company should give them a bill of sale of an equal number of cases of eggs which had been purchased from local parties, and which were then on the cars to be shipped to its agent in Chicago, which the company agreed to do, on condition that the defendants would allow the shipment to go forward to the person in Chicago to whom it had been consigned. The defendants took the bill of sale on those condi-

tions, and also an assignment of the bill of lading held by the company. The defendants then reported to the First National Bank of Janesville what they had done, and their conduct was approved. It turned out that the company was insolvent, and that the managers left Janesville about that time, and the consignee of the eggs was connected with the company, and disposed of the eggs, and left Chicago for parts unknown, and that the defendants were unable to get the eggs or collect the claim, notwithstanding they made diligent efforts to do both. On June 12, 1901, the defendants reported to the plaintiff, by letter, the substance of what they had done in attempting to collect the amount of his claim against the company, and returned to him the draft and the bill of lading.

*Daniel H. Grady,* for the appellant.

*William G. Wheeler,* for the respondents.

CASSODAY, C. J. Before directing a verdict in favor of the defendants, the trial court inquired of the plaintiff's attorney whether there was any testimony that the defendants ever had absolute possession of the property. The attorney then mentioned the letter of June 12, 1901. The court then asked whether the action was "for conversion, or for negligence in the discharge of duty," and was told by both attorneys that it was an action for conversion. The plaintiff's attorney frankly admitted that the only facts in the case to sustain the contention that the defendants ever had possession of the property so as to convert it was the letter, and that the tort had been waived. The trial judge then ruled that the letter must be read in the light of the defendant *Mouat's* testimony, and stated:

"I must hold that, as a matter of fact, and as a matter of law, *Mr. Mouat* never had that property so absolutely in his control that he could have sold it if the plaintiff had telegraphed to him to do it, or that any communication with the plaintiff in this case would have helped the matter. No di-

rections from him would have changed it. I cannot see, in this case, that there is anything here for the jury, and it seems to me that it is my duty to direct a verdict in this case for the defendants, and I accordingly do so."

We have no doubt about the correctness of such ruling. There is nothing in the letter to the contrary. It is therein expressly stated that when the defendants received the draft they "found that the eggs for which this draft was drawn in payment had already been delivered to the Rock River Creamery Company, and had been re-shipped by them to Chicago." It further stated the efforts they had made to collect the plaintiff's claim for the eggs. Manifestly, the defendants never had possession or control of the eggs shipped by the plaintiff; nor did they have possession of the other eggs which they tried to get in lieu of the plaintiff's eggs. There was certainly no conversion. There is no pretense of any neglect of duty on the part of the defendants, and, besides, the action is not based on that theory. The verdict was properly directed.

*By the Court.*—The judgment of the circuit court is affirmed.