**Eugene L. NEWBURY,
Plaintiff-Appellant,**

v.

**PRISONER REVIEW BOARD of the STATE OF ILLINOIS, et al.,
Defendants-Appellees.**

**No. 85–1603.**

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 23, 1986.

Decided May 19, 1986.

Catherine P. Wassberg, Legal Aid Clinic, Chicago, Ill., for plaintiff-appellant.

Imelda Terrazino, Ill. Atty. Gen., Chicago, Ill., for defendants-appellees.

Before BAUER, COFFEY and RIPPLE, Circuit Judges.

COFFEY, Circuit Judge.

The plaintiff, Eugene L. Newbury ("Newbury"), challenged the procedures employed by the Illinois Prisoner Review Board ("Review Board") in denying him parole. Newbury appeals from the district court's holding that the Due Process Clause does not require each member of the Review Board panel who voted on Newbury's application for parole to attend Newbury's parole hearing. We affirm.

I

Eugene L. Newbury is presently incarcerated in the Centralia Correctional Center serving a 50–150 year term for murder. (He was originally sentenced to death, but his sentence was commuted in 1973.) Newbury appeared before the Review Board in August 1978, July 1979, and May 1980, and on each occasion his application for parole was denied. In July 1980, Newbury filed this action in the United States District Court for the Northern District of Illinois, claiming that certain procedures employed by the Review Board in reviewing his parole application denied him his right to due process of law. Newbury's amended complaint referring to his 1978, 1979 and 1980

hearings alleged that: (1) the Review Board failed to adequately set forth its composite reasons for denying his parole; (2) the Review Board refused to allow him to call witnesses on his own behalf, the right to have the decision based only upon the evidence presented at the hearing, the right to confront the witnesses against him, the right to have counsel present at the hearing, and the right "to have a record of the hearing made"; and (3) the Board failed to provide Newbury with notice of the reasons for its decision to schedule his next appearance before the Parole Board three years following his 1980 parole denial. Newbury also alleged that the 1977 amendment to the Illinois Code of Corrections permitting the Board to schedule an inmate's next parole hearing a maximum of three years following the denial of parole was invalid under the *ex post facto* clause of the United States Constitution. Newbury sought a writ of habeas corpus, monetary damages, and injunctive relief ordering the defendants to conduct an immediate parole hearing correcting the procedural defects alleged in his complaint. The record reflects that since Newbury filed his suit, a panel of the Review Board denied his parole application after a hearing in 1983, and 1984 and at oral argument before this court, Newbury's counsel stated that the Review Board also denied his parole application following a hearing in 1985.

The parties filed cross motions for summary judgment, with Newbury contending that he had a constitutional right to appear before all members of the Review Board panel who voted to deny on his parole application. Further, he claims he was denied this right since only two of the three members of the Review Board panel who acted on his application for parole were present at his 1983 hearing.[1] Newbury requested the court to enjoin the Review Board panel from conducting parole hearings without the presence of the entire three person panel eligible to vote on the prisoner's application for release on parole. The district court dismissed Newbury's habeas corpus claims, citing the absence of evidence that Newbury had "exhausted his state mandamus remedies." The court granted Newbury's motion for summary judgment on his § 1983 claims with respect to his request that the Review Board provide Newbury with access to all the documents in his parole file considered by the Review Board in denying his parole. The court went on to deny the remainder of his 1983 claims, specifically denying that any constitutional right exists requiring that all members of the Review Board panel eligible to act on his parole application be present at his hearing, in effect holding

---

1. The Prisoner Review Board is comprised of ten members appointed by the governor of the State of Illinois. The Illinois Correctional Code and the Rules of the Illinois Prisoner Review Board in effect until October 1985 provided that the Review Board may meet and take action in panels of three members, with the action of the majority of the panel constituting the action of the Board. Ill.Rev.Stat. ch. 38, ¶ 1003-3-5(a); Rules of the Prisoner Review Board, I.C.1. The statute further provides that if the person under consideration for parole is in the custody of the Illinois Department of Corrections, at least one member of the Review Board shall interview the prisoner, and a report of that interview shall be available for the Review Board's consideration. Ill.Rev.Stat. ch. 38, ¶ 1003-3-5(b). The rules of the Illinois Prisoner Review Board were amended effective October 10, 1985, 9 Ill.Reg. 2856, with the amended rules providing that the Board act in panels of at least three members and that at least one member of the panel shall interview the inmate and hear any witnesses.

The rules also provide that if all members who are to participate in the release decision are not present at the hearing, the presiding member of the panel (designated by the Chairman of the Review Board) will orally summarize the hearing for the benefit of the absent panel member or members prior to a vote on the question of release. If a case is not decided the same day as the hearing, the presiding member "shall prepare a written summary for use by the other members." The present rules also mandate an *"en banc"* proceeding (before the entire Review Board) for prisoners (such as Newbury) who were convicted for the offense of murder: the rules provide that an inmate convicted for murder shall be heard by a panel of the Board and the panel shall submit the case to the entire Review Board (ten members) at an *en banc* hearing and in order to grant parole in a case that receives *en banc* consideration, a majority of the appointed members of the Review Board must vote in favor of the grant of parole. 20 Ill.Ad.Code 1610.40.

that no such right exists under the Illinois statutes. On appeal Newbury argues that he has a constitutional right to have all Review Board panel members who acted on his parole application be present at his parole hearing.[2]

## II

Newbury argues that the district court failed to apply the analysis set forth in *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), in determining whether he has a constitutional right to have each of the three members of the Review Board panel voting on his parole application present at his parole hearing. He also asserts that issues of fact relevant to the *Mathews* analysis preclude the entry of summary judgment and requests this court remand this action to the trial court for further discovery in order that the court may properly apply the *Mathews* test.

The Review Board does not dispute that the Illinois parole statute (Ill.Rev.Stat. ch. 38, § 1003–3–5) and the rules of the Illinois Prisoner Review Board provide an "inmate with a legitimate expectation of parole entitled to some measure of constitutional protection." *Heirens v. Mizell*, 729 F.2d 449, 466 (7th Cir.1984) (quoting *United States ex rel. Scott v. Illinois Parole and Pardon Board*, 669 F.2d 1185 (7th Cir.), *cert. denied*, 459 U.S. 1048, 103 S.Ct. 468, 74 L.Ed.2d 617 (1982)). The issue before the

court is whether the constitutional protection afforded under the Due Process Clause required that each and every member of the three person panel of the Review Board who voted on the plaintiff's application for parole be present at his parole hearing.

It is "axiomatic that due process "is flexible and calls for such procedural protections as the particular situation demands.'" *Greenholtz v. Inmates of the Nebraska Penal and Correctional Complex*, 442 U.S. 1, 12, 99 S.Ct. 2100, 2106, 60 L.Ed.2d 668 (1979) (quoting *Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972)). Thus, "the process that is due in any given case varies according to the factual circumstances of the case and the nature of the interests involved." *Benson v. Scott*, 734 F.2d 1181, 1185 (7th Cir.1984); *see also Mathews v. Eldridge*, 424 U.S. 319, 334, 96 S.Ct. 893, 902, 47 L.Ed.2d 18 (1976). In *Mathews*, the United States Supreme Court set forth three factors to be considered in determining whether the flexible concepts of due process have been satisfied in a particular case: (a) the private interests implicated; (b) the risk of an erroneous decision through the use of the procedures currently employed and the probable value of additional procedural safeguards; and (c) the government interests, including the fiscal and administrative burdens that the addi-

2. Newbury failed to assert his alleged right to have all members of the Review Board panel who vote on his parole application present at his hearing in his Amended Complaint but did raise it in his Memorandum of Law in Support of Plaintiff's Motion for Summary Judgment. The defendants failed to object to Newbury's raising the issue for the first time on Summary Judgment. Instead, the defendants addressed the merits of Newbury's claim in their Response to Plaintiff's Motion for Summary Judgment and further raised the issue in their Cross Motion for Summary Judgment. The defendants maintained that the attendance of two of the three panel members who voted on Newbury's parole at his hearing complied with the requirements of the Due Process Clause. The district court specifically considered the issue and ruled in the defendants' favor. The court in *Evans v. Bexley*, 750 F.2d 1498 (11th Cir.1985), was presented with a similar situation:

"The plaintiffs did not raise [the issue of whether the trustees of union pension funds violated ERISA] in their complaint. They did however cite them in opposition to the trustee's motion for summary judgment and the district court did rule on them. 'In federal practice, any question which has been presented to the trial court for a ruling and not thereafter waived or withdrawn is preserved for review.' ... We may therefore review the plaintiff's case."

*Id.* at 1499 n. 1 (quoting *United States v. Harue Hayashi*, 282 F.2d 599, 601 (9th Cir.1960)); *see also National Wildlife Federation v. Costle*, 629 F.2d 118, 133 n. 45 (D.C.Cir.1980); *Gipps Brewing Corp. v. Central Manufacturers' Mutual Ins. Co.*, 147 F.2d 6, 15 (7th Cir.1945) ("any issue which was considered by the court below may be ruled upon even though not included in the pleadings"). Accordingly, we may properly review Newbury's appeal.

tional procedures would entail. *Mathews*, 424 U.S. at 335, 96 S.Ct. at 903.

■ The initial element to be considered is Newbury's interest in being considered for parole. This court has stated that a parole candidate's interest in conditional release on parole "is undoubtedly valuable," *Walker v. Prisoner Review Board*, 694 F.2d 499, 503 (7th Cir.1982), but "prisoners seeking parole are not afforded all of the protections of the due process clause to which defendants in criminal trials are entitled." *Fardella v. Garrison*, 698 F.2d 208, 212 (4th Cir.1982). In *Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), the Supreme Court held that parole *revocation* proceedings do not require that a paroled individual be afforded "the full panoply of rights due a defendant in [a criminal] proceeding." *Id.* at 480, 92 S.Ct. at 2600. Courts have also recognized that an inmate's interest in being released on parole requires less due process protection than the revocation of parole status. *See, e.g., Zurak v. Regan*, 550 F.2d 86, 93 (2d Cir.), *cert. denied*, 433 U.S. 914, 97 S.Ct. 2988, 53 L.Ed.2d 1101 (1977). Although Newbury has an interest in securing conditional release on parole, his interest is afforded less constitutional protection than either a criminal defendant at trial, or an individual on parole who faces revocation of his parole status.

■ The second factor to be addressed is the risk of an erroneous denial of parole when less than all the members of the panel who vote on a particular parole application are present at the parole hearing and the questionable value of requiring that all members of the Prisoner Review Board panel eligible to vote on the parole application be present at the hearing. To properly consider this second factor, we must initially assess the nature of the decision to grant or deny parole under the Illinois statutes and regulations.

Newbury's action challenges those regulations in effect at the time the Review Board panel denied his parole application. The relevant rules required that member or members who interviewed the parole candidate during the hearing compile a summary report of all "pertinent information concerning: (a) The institutional records. (b) The interview of the individual. (c) Those who appeared or addressed comments to the [panel of the Review] Board." Rules of the Prisoner Review Board, § IV.D.1. The regulations further required that in reviewing a prisoner's application for parole, in addition to the summary report concerning the interview, the Review Board panel:

"shall consider the following:

a) Material submitted by the clerk of the committing court ... including the sentence or adjudication, any pre-sentence reports and the statement by the State's Attorney and any statements by the attorney who represented the [parole] applicant at his original sentencing.

b) The clinical evaluation prepared by the Department of Corrections at the time of commitment.

c) Any report by the Department [of Corrections] and the chief administrative officer concerning the individual.

d) A parole progress report.

e) Any medical or psychiatric reports available to the Board.

f) Any relevant material submitted by the prospective parolee."

*Id.* at IV.D.2. Further, the panel "may consider any other information in the file or submitted in support or opposition to parole by other persons." *Id.* at IV.D.3. Thus, the parole candidate's interview with the Review Board panel is just *one* of the elements reviewed and considered by the panel in deciding whether to grant or deny parole. After reviewing the information pertinent to the candidate's application, the Review Board rules mandated that the Review Board panel shall not parole a candidate if it determines that: (a) there is a substantial risk that the candidate will not conform to reasonable conditions of parole; (b) release of the candidate would deprecate the seriousness of the offense or promote disrespect for the law; (c) release

would have a substantially adverse effect on institutional discipline. *Id.* at V. This court has previously recognized that "there is no set of facts which, if shown, entitle an Illinois inmate to parole under Illinois law as it has been interpreted by its Supreme Court." *Heirens*, 729 F.2d at 465.

As the Supreme Court reasoned in *Greenholtz*:

"[T]he [parole] decision differs from the traditional mold of judicial decisionmaking in that the choice involves a synthesis of record facts and personal observation filtered through the experience of the decision maker and leading to a predictive judgment as to what is best both for the individual inmate and for the community. This later conclusion requires the Board to assess whether, in light of the nature of the crime, the inmate's release will minimize the gravity of the offense, weaken the deterrent impact on others, and undermine respect for the administration of justice."

442 U.S. at 8, 99 S.Ct. at 2104. Thus, under the Illinois rules governing parole, as in *Greenholtz*:

"The parole-release decision, ... is more subtle and depends on an amalgam of elements, some of which are factual but many of which are purely subjective appraisals by the Board members based upon their experience with a difficult and sensitive task of evaluating the advisability of parole release. Unlike the [parole] revocation decision, there is no set of facts which, if shown, mandate a decision favorable to the individual. The parole determination, like a prisoner-transfer decision may be made

'for a variety of reasons and often involve[s] no more than informed predictions as to what would best serve [correctional purposes] or the safety and welfare of the inmate. *Meachum v. Fano*, 427 U.S. [215] at 225, 96 S.Ct. [2532] at 2538 [49 L.Ed.2d 451 (1986) ].' "

*Greenholtz*, 442 U.S. at 10–11, 99 S.Ct. at 2105–06. In *Greenholtz* the court noted that the parole determination "must in-clude consideration of what the entire record shows up to the time of the sentence, including the gravity of the offense in the particular case. The behavior record of an inmate during confinement is critical in the sense that it reflects the degree to which an inmate is prepared to adjust to parole release." *Id.* at 15, 99 S.Ct. at 2108. Accordingly in *Greenholtz*, the parole candidate's appearance before the Board afforded the parole applicant the opportunity to ascertain if the records before the Board are in fact his records and the opportunity to present any other special considerations demonstrating why he is an appropriate candidate for parole. *Id.* "Since the [parole] decision is one that must be made largely on the basis of the inmate's files," *id.,* we conclude that permitting less than the full complement of the three member panel to interview Newbury at his hearing rather than requiring the presence of all panel members who voted on his application does not pose a substantial risk of an erroneous decision. Newbury had a full opportunity to be heard by two members of the panel (even though only one is required by statute and regulation) to present any special considerations concerning his application for parole and to insure that the Board was considering the proper records. In any event, we are confident that one member of the panel as required by statute is capable of safeguarding a parole candidate's interest in conditional release. In addition, the Illinois statute and regulations mandate that not one, but three members of the Review Board sitting as a panel make the decision to grant or deny parole. Further, the presiding member of the panel is required to make a summary report of the parole candidate's interview to the panel member or members not present at the hearing. As noted above, the interview is only one of numerous elements required to be considered by the panel of the Review Board in their determination as to whether to grant or deny parole. Since the panel is given a summary report of the parole candidate's interview and has access to all reports or material in the parole candidate's file when reviewing the parole appli-

cation, requiring all members of the Review Board panel who vote on an inmate's application for parole to be present at the interview would provide at best a negligible decrease in the risk of an erroneous parole decision.[3]

Finally, turning to the third factor set forth in *Mathews*, the government interest, Newbury asserts that the defendants have failed to prove the absence of a genuine issue of material fact regarding the fiscal burden of requiring all Review Board members who vote on an applicant's parole to attend the oral hearing. The court in *Mathews*, although presented with widely varying estimates of the fiscal and administrative burdens of the additional procedures proposed in that case, stated that "experience with the constitutionalizing of government procedures suggests that the ultimate additional cost in terms of money and administrative burdens would not be insubstantial." 424 U.S. at 347, 96 S.Ct. at 909. Furthermore, as discussed in *Mathews* the government interest includes, but is not limited exclusively to the fiscal and administrative burdens on the government of the proposed additional procedures. *Id.* Thus, we must also consider the public interest in encouraging proper state experimentation in the procedures employed to make parole release decisions. The Supreme Court stated in *Greenholtz* that "[o]ur system of federalism encourages this state experimentation [in establishing an appropriate process for making parole release decisions]. If parole determinations are encumbered by procedures that states regard as burdensome and unwarranted, they may abandon or curtail parole." 442 U.S. at 13, 99 S.Ct. at 2107. We must bear in mind that requiring all Review Board members of the Review Board panel who are eligible to vote on an applicant's parole to attend the parole hearing not only poses an increased fiscal and administrative burden for the state but also may possibly incline the Illinois courts and legislature to find ways to stifle and/or curtail its parole system contrary to the public interest if they find that such a requirement is unduly burdensome.

After balancing the inmate's limited liberty interest in being released on parole against the minimal risk of an erroneous decision under the current procedures, against the public interest in encouraging state experimentation in proper parole release procedures, and against the potential logistical, fiscal and administrative burdens to the state if the appellant's position were to be adopted, we hold that the Due Process Clause does not require that all three members of the Prisoner Review Board panel who vote on a particular inmate's application for parole be present at that inmate's parole hearing. The Review Board's procedure for providing the inmate with the opportunity to appear personally before at least one member of the panel of the Review Board to insure that the Board is considering his records and to present any special considerations demonstrating why he is an appropriate candidate for parole satisfies the requirements of the Due Process Clause of the United States Constitution.

## III

The decision of the district court is AFFIRMED.

---

**3.** The defendants state in their brief that a tape recording of Newbury's hearing was available to that member of the three person panel not present at his hearing. The record contains a letter to Newbury from the Executive Director of the Review Board stating, "Recordings of all hearings are made and retained, to be transcribed in the event a need arises in court." The record fails to disclose that any recordings were used by the panel during their deliberation of the parole candidate's application for conditional release. It is obvious that if recordings of the hearing are made they would certainly be an additional safeguard to be employed by an absent member in addition to the summary compiled by the presiding member of the panel.